GARY M. LEPPER, #45498
FURAH Z. FARUQUI, #233083
LAW OFFICES OF GARY M. LEPPER
1600 S. Main Street, Suite 305
Walnut Creek, CA 94596
(925) 256-6180
(925) 943-6190 (fax)

Attorneys for defendants
Joseph Dale Wren, Newark Police Department
and Jim Davis

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNELIUS LOPES,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>FREMONT FREEWHEELERS, et al.,<br><br>　　　　　Defendants. | No. C07-06213-PH<br><br>**DEFENDANTS JOSEPH DALE WREN, NEWARK POLICE DEPARTMENT and JIM DAVIS' MOTION TO DISMISS**<br>**(Federal Rule of Civil Procedure 12(b)(6)**<br><br>Date:　　　July 9, 2008<br>Time:　　　9:00 a.m.<br>Courtroom:　3 |

I.　INTRODUCTION

Defendants Newark Police Department, Joseph Dale Wren and Jim Davis ("City") admittedly are dashing to reach the gangplank before the procedural ship sails: three other parties also have scheduled motions to dismiss for June 25, 2008. Unfortunately, the 35-day requirement for notice prior to hearing may demand that this motion be heard on the date specified above, rather than June 25.

Notwithstanding inefficiencies of timing, the City defendants' motion essentially duplicates that of the other defendants: be it due to *res judicata* or the statute of limitations, the plaintiff's complaint is doomed.

POINTS & AUTHORITIES IN SUPPORT　　　1　　　*F:\CASE\Lopes\NEW\P\MOTION DISMISS\P&A.doc*
OF MOTION TO DISMISS

## II. FACTUAL BACKGROUND

The "factual background" has been well-summarized in Judge Breyer's Memorandum and Order of June 25, 2007. It will be repeated, though without resort to quotation marks:

At approximately 8:20 a.m. on June 12, 2004, Newark Police Officers Joseph Wren ("Officer Wren") and Farley were dispatched to investigate an accident involving a pedestrian and a bicyclist at the Eureka Circle Course in Newark, California. When Officer Wren arrived at the scene, he noticed that the roadway had been closed for a bicycle race. Officer Wren noticed that plaintiff Cornelius Lopes, with a mangled face, was sitting on the curb. Lopes told Officer Wren that he was confused about what had happened, but confirmed that he had been running in the roadway in the opposite direction of the bicycle racers. Lopes made no other statements to Officer Wren and was eventually transported by ambulance to Washington Hospital. Prior to this incident, Officer Wren had never met nor heard of plaintiff Lopes.

Officer Wren spoke to various witnesses at the scene. Byron Sheppard reported that he had been directly behind the bicyclist that collided with Lopes and that he had observed Lopes run directly into the group of bicyclists and hold his right arm out to the side, level to the ground, and strike the bicyclist in the middle of the chest. Officer Wren also spoke with bicyclist Bob Parker, the bicyclist that collided with Lopes. Parker stated that he did not see Lopes prior to the accident. Another bicyclist who was involved in the accident did not see or hear what caused the collision.

Officer Wren also spoke with Jason Sage. Sage reported that Lopes had been warned to stay off the roadway and that Sage had been told that on one occasion Lopes had responded something to the effect of "F__You Jew."

The next day Officer Wren spoke with Lopes. Lopes denied that he had warned him to stay off the course. He also denied that he had argued with any of the bicyclists or stuck his arm out while jogging to interfere with the bicyclists. Later that day, Lopes faxed a written statement to Officer Wren. According to Officer Farley's police report, upon his arrival at the scene

1  Officer Farley spoke with witness Peter Rosa. Rosa reported that Lopes had intentionally
2  collided with the bicyclists.

3        On June 14, 2004, Officer Wren prepared a written police report that included the above
4  information, as well as Lopes' written statement. Officer Wren concluded that the report should
5  be sent to the Alameda County District Attorney for review and filing of "PC 242" (battery)
6  charges against Lopes. Officer Wren concluded: "Victims, Parker and Rath believe this Act was
7  intentional on Lopes behalf. They requested that a report covering the details of this incident be
8  sent to the DA's office." The District Attorneys' Office subsequently asked the Newark Police
9  Department to obtain further information. In connection with this further investigation, witness
10 Jason Sage sent Officer Wren additional written witness statements and a CD. Several of the
11 witnesses asserted in their written statements that they had told Lopes to exit the bicycle course.
12 In addition, witness Tim O'Hara asserted that when he politely asked Lopes to leave the course,
13 Lopes responded: "F___ You, Jew." Officer Wren submitted both the written statements and the
14 CD to the District Attorney's Office.

15       On July 6, 2004, the District Attorney's Office asked Officer Wren to locate the bicyclist
16 that had collided with Lopes. Officer Wren produced a second supplemental report identifying
17 Bob Parker as the struck bicyclist. Officer Wren's submission of the supplemental report ended
18 his participation in the case. He never met nor spoke with any District Attorney's Office
19 representative concerning whether to file charges against Lopes or issue an arrest warrant.

20       On July 15, 2004, Alameda County Deputy District Attorney Lisa Faria asked Newark
21 Police Sergeant Robert Douglas to author a "Declaration in Support of Arrest and/or Issuance of
22 Warrant of Arrest" ("Declaration") to accompany the District Attorney's criminal complaint for
23 an arrest warrant against Lopes. Prior to the request from Faria, Sergeant Douglas had never met
24 nor spoken with a representative of the District Attorney's Office concerning whether to file
25 charges against Lopes. Sergeant Douglas read the criminal complaint and Officer Wren's police
26 report with supplements and concurred that probable cause existed to arrest Lopes. Accordingly,
27

1  he prepared and signed the Declaration. Once he submitted the Declaration, his involvement
2  with Lopes' case ended.
3        On July 16, 2004, a criminal complaint and arrest warrant were issued charging Lopes
4  with misdemeanor battery arising from the June 12, 2004 collision. Lopes was not convicted of
5  the charges.

### III.    PROCEDURAL HISTORY

A.    The Criminal Prosecution

Because of its implications for causes of action within the plaintiff's present lawsuit, one should be aware that the criminal complaint and arrest warrant for misdemeanor battery were issued on July 15, 2004. (Defendants' Nolan, et al., Request for Judicial Notice, Exhibit A, incorporated herein by this reference.) Following a "hung jury," the charges were dismissed on October 12, 2005. (Id., Exhibit B, also incorporated herein by this reference.)

B.    The First Lawsuit

On June 9, 2006 the plaintiff sued (United States District Court docket number C06-03705CRB), among others, present City defendants Newark Police Department and Officer Joseph D. Wren (note: that cast did not include present defendant Jim Davis). His complaint contained nine "Claims" (sometimes called "Counts"), though, as Judge Breyer remarked in his Memorandum (4:11-12), "it is difficult to discern the exact nature of his claims." The extent to which those "Claims" correlate with the plaintiff's present array is discussed below (5:18-6:8).

By Judge Breyer's Memorandum of June 25, 2007, all Claims/Counts against the City defendants were eliminated by summary judgment.

///
///
///
///
///
///

C.  The Present Lawsuit

Following its filing in Alameda Superior Court on November 2, 2007, the plaintiff's lawsuit was removed to the Northern District on December 7, 2007. As amended, it contains a monumental 18 causes of action against 33 defendants.[1]

The plaintiff charges these moving defendants diversely:

- Count 5 (Jim Davis, et al.) for having "recklessly published false information that the plaintiff had committed a crime" which resulted in his having been "charged with two counts of battery plus a hate crime."[2]
- Count 8 (Jim Davis, et al.) for 42 U.S.C. section 1985 due to "depriving Plaintiff equal protection under the law and equal privileges and immunities."
- Count 9 (Joseph Wren) for an incomplete investigation, which thereby did "deprive Plaintiff of his due process rights."
- Count 11 (Newark Police Department and Joseph Wren) for having "run afoul of the Establishment Clause by [having] 'Hate Crime' checked in the police report."
- Count 12 (Jim Davis and Joseph Wren) by having participated in a "private conspiracy" which "deprived the Plaintiff" of his Thirteenth and Fourteenth Amendment rights.
- Count 13 (Newark Police Department and Joseph Wren) to declare "the State [criminal] proceeding as invalid."
- Count 18 (Jim Davis and Joseph Wren) for "malicious prosecution", evidently under state law.

---

[1] On December 13, 2007 – i.e., within one week following removal – defendant CB Richard Ellis, Inc. moved to dismiss pursuant to Rule 12(b)(6) also on the grounds of *res judicata* and the statute of limitations. The motion was granted on March 10, 2008.

[2] In reviewing the aforementioned Exhibits A and B, the reader will recognize that the plaintiff never was charged with any "hate crime." The charges consisted only of two counts of California Penal Code §242 (battery).

Four of these causes of action echo those in the first complaint.  As summarized by Judge Breyer, they consist of the following:

- "In 'Claim 1' [the plaintiff] appears to contend that…[Wren's] police report violates the Establishment Clause."  [See above, Count 11.]
- "In 'Claim 2' [the plaintiff] contends that Wren conspired with others to obtain plaintiff's arrest warrant without probable cause."  (In addition, though not specified by Judge Breyer, "Count 3" alleged that "the defendants (sic) private conspiracies deprived the plaintiff of equal protection…" [See above, Count 12.[1]]
- "In 'Claim 3' [the plaintiff] alleges that Officer 'Wren recklessly published false information'…" [See above, Count 5, now omitting Officer Wren but including, for the first time, Jim Davis.]
- Claim 2's text also specified that "defendant Joseph Wren lead (sic) an incomplete investigation regarding [the] accident…[which did] deprive plaintiff of his due process rights." [See above, Count 9.]

In sum, five of the seven "Counts" now asserted against the City defendants are repetitions of those previously adjudicated (with the addition, as it were, of Mr. Davis in four of them).  It does not require much imagination to anticipate the effects of *res judicata*…

IV.    THE EFFECT OF *RES JUDICATA* (COUNTS 5, 8, 9, 11 AND 12)

It hardly will be a revelation to learn that "[r]es judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." (*Owens v. Kaiser Foundation Health Plan, Inc.* (9th Cir. 2001) 244 F.3d 708, 713, quoting from *W. Radio Servs. Co. v. Glickman* (9th Cir. 1997) 123 F.3d 1189, 1192.)  It has been further explained that "[t]he doctrine is applicable whenever there is '(1) an identity of claims, (2) a

---

[1] It is worthy of note that, in his Opposition to summary judgment (filed June 8, 2007), the plaintiff explicitly argued that allegations of "conspiracy" were, at least in part, based on 42 U.S.C. section 1985.  He now does so again, though it is explicitly part of his current complaint (see "Count 8").

1  final judgment on the merits, and (3) identity or privity between the parties'." (*Owens*, supra, at 713, quoting from *W. Radio*, at 1192.)

Notwithstanding the three criteria, "[t]he central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts." (*Owen*, supra, at 714, quoting from *Frank v. United Airlines, Inc.* (9th Cir. 2000) 216 F.3d 845, 851.)

Without question, the plaintiff's lawsuits <u>all</u> "arise out of the same transactional nucleus of facts": namely, the investigation and subsequent prosecution of the plaintiff pertaining to the discrete incident between the plaintiff and the bicyclists on the morning of June 12, 2004. Bluntly, <u>none</u> of the City defendants seems to have had any contact with or knowledge of the plaintiff but for the bicycle race incident and its aftermath. So is the "central criterion" amply satisfied. (In addition, the claims truly are identical in the main; where they are not in text, they are in both essence and intent.)

Last, Judge Breyer's summary judgment decision, with the subsequent entry of judgment itself, is indisputably "a final judgment on the merits."

By the time of the conclusion of the criminal charges (by dismissal on October 12, 2005), there were no further events or facts to evolve. Therefore, <u>all</u> such facts, participants, claims, grievances, etc., were (or certainly should have been) known to the plaintiff by the time he brought his first lawsuit on June 9, 2006. Same people, same events, same facts: *res judicata*.

V.  THE EFFECT OF THE STATUTES OF LIMITATION

A.  The Federal Claims

Because section 1983 does not specify a limitations period within which to bring an action, the applicable limitation is that which governs personal injuries in the state where the action arose. (*Owens v. Okure* (1989) 488 U.S. 235, 238; *Wilson v. Garcia* (1985) 471 U.S. 261, 275.) Section 1983 contentions are to be characterized as personal injury actions for statute of limitations purposes and are governed by the state's general or residual personal injury statute of limitations.

(*McDougal v. County of Imperial* (9th Cir. 1991) 942 F.2d 668, 672; *Gibson v. United States* (9th Cir. 1986) 781 F.2d 1334, 1338.)

Until 2002, California's applicable statute of limitations was one year, by virtue of its general or residual personal injury statute (Code of Civil Procedure §340(3)). (*McDougal*, supra, at 672.) As of January 1, 2002, the period was increased to two years (Code of Civil Procedure §335.1).

Therefore, the plaintiff's 1983 claims (including those which properly should be: Counts 9, 11 and 12) can encompass only those which accrued during the period June 12, 2004-June 12, 2006. As the present lawsuit was filed on November 2, 2007, the plaintiff's federal claims are tardy by almost 17 months.

B.  The State Claims

Of course, as the statute of limitations for the federal claims is the state statute of limitations, so any plaintiff's cause of action (Count 18?) based on state law is stale by the exact same measure of time.

## VI.  CONCLUSION

By now, the court has long since decided if any of the plaintiff's "Counts" can survive either *res judicata* or the statute of limitations. Presumably, the result of this motion will be the same as the others.

However, the plaintiff has had abundant opportunity to litigate his grievances. That time has passed. As it has, so should this most recent lawsuit.

Date: June 2, 2008                    LAW OFFICES OF GARY M. LEPPER

/s/
_____
GARY M. LEPPER
Attorney for defendants Joseph Dale Wren, Newark Police Department and Jim Davis