GARY M. LEPPER, #45498
FURAH Z. FARUQUI, #233083
LAW OFFICES OF GARY M. LEPPER
1600 S. Main Street, Suite 305
Walnut Creek, CA 94596
(925) 256-6180
(925) 943-6190 (fax)

Attorneys for defendants
Joseph Dale Wren, Newark Police Department
and Jim Davis

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNELIUS LOPES,<br><br>    Plaintiff,<br><br> vs.<br><br>FREMONT FREEWHEELERS, et al.,<br><br>    Defendants. | No. C07-06213-PH<br><br>**DEFENDANTS JOSEPH DALE WREN, NEWARK POLICE DEPARTMENT and JIM DAVIS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS (Federal Rule of Civil Procedure 12(b)(6)**<br><br>**Date:  July 9, 2008**<br>**Time:  9:00 a.m.**<br>**Courtroom: 3** |

## I. **INTRODUCTION**

The plaintiff's Opposition does not salvage a complaint barred by *res judicata* and the statute of limitations; indeed, it essentially ignores both bases of the defendants' motion. That should be the end of that, really.

## II. **ANALYTIC DIFFICULTIES**

Of the Opposition's 29 pages, 22 are superfluous documents and exhibits. Those documents will be disregarded: "[E]xtraneous evidence should not be considered in ruling on a motion to dismiss." (*Arpin v. Santa Clara Valley Transp. Agency* (9th Cir. 2001) 261 F. 3d 912, 925.)

DEFT REPLY TO OPPOSITION    1    *F:\CASE\Lopes\NEW\P\MOTION DISMISS\REPLY.doc*
TO MOTION TO DISMISS
No. C07-06213-PH

Virtually all of the Opposition focuses on other defendants (USA Cycling, Linda Buffeti, Alameda County District Attorneys, Gary Birch, Tim O'Hara, Richard Brockie, Fremont Freewheelers and Jason Sage), rather than the Newark Police Department, Joseph Wren and Jim Davis (whose name actually is missing from the Opposition).

The plaintiff does devote three lines (reiterated four times: Opposition, 2:6-7, 17:7-9, 20:20-24, 25:18-21) to "new" allegations against Wren and the Newark Police Department: namely, that the "Newark Police Department did not give him a Miranda warning" and that "the statutes of limitations began July 2007 when the officer [Wren] opened his mouth [in court] and couldn't remember the lie he wrote in the police report dated June 2004."

Like the plaintiff's diverse documents, these "new" claims should be disregarded, since "new allegations contained in…[the] opposition motion are irrelevant for Rule 12(b)(6) purposes…a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (*Schneider v. California Dept. of Corrections* (9th Cir. 1998) 151 F.3d 1194, 1197, italics original.)

### III.   THE EFFECT OF RES JUDICATA AND THE STATUTE OF LIMITATIONS

#### A.   Res Judicata

"[R]es judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action... [T]he doctrine is applicable whenever there is '(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between the parties'." (*Owens v. Kaiser Foundation Health Plan, Inc.* (9th Cir. 2001) 244 F.3d 708, 713, quoting from *W. Radio Servs. Co. v. Glickman* (9th Cir. 1997) 123 F.3d 1189, 1192.)

The plaintiff tacitly concedes this issue (see Motion, 6:19-7:20), probably because it is hard to resist the irresistible. Certainly, he offers no informed opposition. The facts, the circumstances, the criminal prosecution are identical to the first lawsuit. *Res judicata* bars this reprise of the original version.

B.  Statute of Limitations

"Because section 1983 does not specify a limitations period within which to bring an action, the applicable limitation is that which governs personal injuries in the state where the action arose." (*Owens v. Okure* (1989) 488 U.S. 235, 238; *Wilson v. Garcia* (1985) 471 U.S. 261, 275.)  "Section 1983 contentions are to be characterized as personal injury actions for statute of limitations purposes and are governed by the state's general or residual personal injury statute of limitations." (*McDougal v. County of Imperial* (9th Cir. 1991) 942 F.2d 668, 672; *Gibson v. United States* (9th Cir. 1986) 781 F.2d 1334, 1338.).

The plaintiff offers no argument to avoid the statute of limitations defense for this June 12, 2004 grievance (namely, this pending lawsuit was filed on November 2, 2007 – some 16½ months after the June 12, 2006 cut-off).

**IV.  THE PLAINTIFF'S "NEW" CLAIMS ARE NOT JUSTICIABLE, IN ANY EVENT**

A.  The "Missing" Miranda Warning

1.  The Miranda Criteria Were Not Satisfied

> "Generally, a suspect's *Miranda* rights are triggered during custodial interrogation. Interrogation is 'express questioning' by the police, or 'any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.' An individual is in custody if considering the circumstances surrounding an interrogation 'a reasonable person . . . felt he or she was not at liberty to terminate the interrogation and leave.' Relevant circumstances to the custody analysis 'include the language used by the officers, the physical characteristics of the place where the question occurs, the degree of pressure applied to detain the individual, the duration of the detention, and the extent to which the person was confronted with evidence of guilt'." (*United States v. Hernandez* (9th Cir. 2007) 476 F.3d 791, 797, citations omitted.)

When Officer Wren arrived at this accident scene, the plaintiff was sitting on the curb "with a mangled face."  Wren "asked [him] what happened" and the plaintiff replied that "he was confused and did not know what happened.  He did confirm that he was in the roadway running in the opposite direction of the bicycle racers.  Lopes made no other statements."  He then "was

1  transported by ambulance to Washington Hospital." (See Wren police report, Exhibit A to the
2  Faruqui Declaration; see also Motion, 2:4-12.)

3  The plaintiff was asked <u>one</u> foundational, non-accusatory question ("what happened?") in
4  a public location.  There is no evidence that Wren even was aware, at that time, of the
5  commission of a crime, much less by the plaintiff.  (Wren was beginning to accumulate
6  information and his investigation would continue after the plaintiff left for the hospital.)  (Id.)

7  None of the criteria for the giving of so-called "Miranda warnings" occurred curbside
8  that day:  Wren's question plainly was not designed "to elicit an incriminating response" (again,
9  Wren was not yet aware of any act to "incriminate"), the plaintiff was not yet a "suspect," he not
10 only was "at liberty" to leave but also he was waiting for the ambulance precisely so that he
11 could leave, he was never detained, he was subjected to no "pressure" and he certainly was not
12 "confronted with evidence of guilt" (if only because no such evidence yet had been gathered).

13 Wren was not required to give any Miranda warnings to the plaintiff.  More to the point,
14 the plaintiff's Opposition offers neither facts nor law to the contrary.

15     2.    <u>In Any Event, Miranda Warning Claims Are Not Valid Under §1983</u>

16 In *Chavez v. Martinez* (2003) 538 U.S. 760, 764, police officers were "investigating
17 suspected narcotics activity" when they "heard a bicycle approaching… They ordered the rider,
18 Martinez, to dismount, spread his legs, and place his hands behind his head." In the subsequent
19 altercation, an officer "shot Martinez several times resulting in severe injuries that left him
20 permanently blinded and paralyzed from the waist down), [Martinez] was placed under arrest. A
21 patrol supervisor arrived and questioned Martinez while he was receiving treatment from
22 medical personnel… At no point during the interview was Martinez given *Miranda* warnings."
23 (Id.)

24 *Chavez* emphasized that Miranda warning claims are improper under §1983: "In the Fifth
25 Amendment context, we have created prophylactic rules designed to safeguard the core
26 constitutional right protected by the self-incrimination clause…[R]ules designed to safeguard a
27 constitutional right, however, do not extend the scope of the constitutional rights of any person."

DEFT REPLY TO OPPOSITION  
TO MOTION TO DISMISS  
No. C07-06213-PH                             4                    *F:\CASE\Lopes\NEW\P\MOTION DISMISS\REPLY.doc*

1  Accordingly, a failure "to read Miranda warnings" does not "violate [the plaintiff's]
2  constitutional rights and cannot be grounds for a §1983 action." (Id., at 772-773.)

3  Thus, even if Miranda rights were applicable, they are ineligible to anchor a §1983 claim.

4  B.    <u>Perjury and the Statute Of Limitations</u>

5  The plaintiff now proposes that "the statutes of limitations began July 2007 when the
6  officer [Wren] opened his mouth [during the criminal trial] and couldn't remember the lie he
7  wrote in the police report dated June 2004." "Lie" or not, it arose at the time of the writing of the
8  <u>2004</u> police report.

9  Because the plaintiff's 1983 claims are restricted to the two-year period of June 12, 2004-
10 June 12, 2006 (Motion, 7:21-8:14) and because the present lawsuit was filed on November 2, 2007,
11 the "new" claims are tardy by almost 17 months. They are not viable.

12 Even if Wren truly perpetrated a "lie" and then "couldn't remember the lie he wrote in the
13 police report," he nonetheless would be immune: "A witness has absolute immunity from liability
14 for civil damages under §1983 for giving perjured testimony at trial." (*Franklin v. Terr* (9th Cir.
15 2000) 201 F. 3d 1098, 1099.)

16 This is not difficult analytically. This perjury "claim" is precluded.

17                               **V.    CONCLUSION**

18 *Res judicata* and the statute of limitations survive. The plaintiff's claims against Newark
19 Police Department, Wren and Davis cannot.

20

21 Date: June 24, 2008                    LAW OFFICES OF GARY M. LEPPER

22
                                          /s/
23                                        _____
                                          FURH Z. FARUQUI
24                                        Attorney for defendants Joseph Dale Wren, Newark
                                          Police Department and Jim Davis
25

26

27