UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CORNELIUS LOPES
      Plaintiff,

V.

FREMONT FREEWHEELERS, et al.,
      Defendants,

CASE No. C07 6213 PJH
MOTION TO REPLY TO
DEFENSE DALBY'S REPLY
OF THE COURTS ORDER.

**FILED**

JUL 2 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT
FROM DISTRICT

Plaintiff is introducing documents that address Res Judicada by the Court that the

eighteen counts before the Court have not be settled by any judicial decision but they

were prevented to be discussed in 2007 by Defense council Dalby.

1     Plaintiff introduces a July 9, 2007 letter the Plaintiff wrote to the Civil Court during the trial

2     against the cyclists and USA Cycling. Plaintiff challenged an agreement between his attorney,

3     defense council Dalby and the Court not to mention the word insurance. There Plaintiff believes

4     Res Judicada does not apply to any of the defendants. Exhibit A. The Courts reply is, exhibit B.

5     The issue of Defendants interference of Plaintiff's Fourteenth Amendment Rights as is raised in

6     the claims before this Court have never been definitively settled by judicial decision.

7     The Plaintiff was seeking a miss trial in his civil claim and the court denying it; therefore, the

8     word "insurance" and claims of conspiracy surrounding insurance is not barred from the

9     Plaintiff litigating it for the first time.

10     None of the claims before this Court arise out of the 2004 incident, depravation occurred in 2007

11     when the Plaintiff found out he was not given the Mirada warning. From the Court transcript,

12     exhibit C. #9 page 8 line 10, he didn't Miranda me ... also allowed the FFBC and cyclist to

13     perform their investigation." 8-20, "I believe that is when the deprivation occurred". Decisions

14     on Miranda are based on the 5th Amendment, which provides that an individual "shall not be

15     compelled in any criminal case to be witness against himself." United States v. Chamberlin, 163

16     499 8th Cir. 1988.

17

18     The immunity the defense council seeks for the District Attorney's office should fail due to the

19     due process violations upon the Plaintiff by various Defendants mentioned in the Plaintiff's

20     eighteen count claim. In 1970, the Supreme Court declared that the Due Process Clause "protects

21     the accused against conviction except upon proof beyond a reasonable doubt of every fact

22     necessary to continue the crime with which he is charged. The Defendants the Newark Police

23     Department, Office Joseph Dale Wren, Defendants Faria, Mesic and Petegrew from the Alameda

24     County District attorney's office interjected the elements of a crime (1) intent (2) causation,

25     which raised the elements of an affirmative defense of the Plaintiff that he "acted under the

26     influence of emotional disturbance". Or they allowed them to be interjected by state actors, as

27     described in the eighteen count claim before the Court. Plaintiff's exhibits D written in May 06

28     from Defendant Lisa Faria to Plaintiff's civil attorney and exhibit E is email communication

1   from Plaintiff's civil attorney and himself, addressing the material fact of statements used by

2   all Defendants to pursue charges against the Plaintiff, including those not served a summons

3   and complaint. When Defendant Wren took the stand in 2007 stating I was not given the Miranda

4   warning. Exhibit F is a direct examination of Defendant Wren in 2005 taken from page 266 line

5   6 he answers yes to the question of line 4, that he was acting as investigator.  Depravation began in

6   2007 when under a "different oath", Defendant Wren stated the Fremont Freewheelers (FFBC)

7   performed an investigation as to how the accident occurred which clearly contradicts his 2005

8   mentioned in line 5 and his supplement investigation on 7/7/04, exhibit G.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Plaintiff Cornelius Lopes and Teresa Lopes are seeking a miss trial in case number

2   HG06260161 due to many factors. First Plaintifi's attorney entered into an agreement with

3   the Court and defense council that no insurance would be mentioned. Most of Plaintiff's case

4   relies on emails written by the Fremont Freewheelers that speaks specifically to liability in

5   relation to their insurance, this agreement precludes me from using my evidence to prove my

6   claims, Pliantiff would have never entered into such an agreement and was not told of such until

7   last week. Second, Plaintiff's attorney breached the agreement with the Court on Monday 2, 2007

8   when she got Plaintiff's witness to mention insurance in connection with the June 12, 2004

9   incident which forced a recess and admonishment from the Court it reserves the right to call

10  a miss trial at any time. Plaintiff argues this violates his Fourteenth Amendment right to the

11  Federal Constitution: "Nor shall any State deprive any person of life, liberty . . . without due

12  process of law", it places prohibition on States: "Nor shall any State . . . deny to any person within

13  its jurisdiction the equal protection of the laws." Third, by this Court ruling in relation to a

14  not granting a miss trial, that conduct of the legal proceedings violates the established rules and

15  principles for the protection of the Plaintiff's and the enforcement of his private rights including

16  notice and the right to a fare hearing before a tribunal to decide the case. Fourth, it allows the

17  Defendants to see all the Plaintiff's evidence and then under the Courts ruling they can call for a

18  miss trial and adjust their defense accordingly. Fifth, Plaintiff was told by his attorney that the

19  Court instructed her that if due to her error, that because the jury heard the word "insurance"

20  and they award damages of a million or more the Court will call a miss trial. And finally the,

21  Plaintiff's look to Adam v. California, 332 U.S.46 (1947), to challenge State proceedings as

22  invalid, in this case the Plaintiff's to explain or deny evidence against him to be commanded

23  upon by the Court and counsel which would be considered by a jury.

24  Plaintiff's request a miss trial due to the six Constitutional issues herein.

25                                                              July 9, 2007

26

27

28

Exhibit B

The court will not
entertain ex parte
communications.
All communications
must be submitted
thru counsel with
copies to opposing
opposing counsel.
U.S./ Judge

1

transcrip july 9 08 distric court.txt

1                 UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF CALIFORNIA

3       BEFORE THE HONORABLE PHYLLIS J. HAMILTON, JUDGE

4       CORNELIUS LOPES,

5                 PLAINTIFF,

6       VS.                        NO. C-07-6213 PJH

7       FREMONT FREEWHEELERS, ET AL.,    PAGES 1 - 17

8                 DEFENDANTS.

9
                       SAN FRANCISCO, CALIFORNIA
10                     WEDNESDAY, JULY 9, 2008

11                     TRANSCRIPT OF PROCEEDINGS

12      APPEARANCES:

13      FOR THE PLAINTIFF:

14      CORNELIUS LOPES, IN PRO PER

15
        FOR THE DEFENDANTS FARIA, MESIC AND PETAGREW:
16      PATTON WOLAN CARLISE LLP
        1999 HARRISON STREET, SUITE 1350
17      OAKLAND, CALIFORNIA 94612
        510-987-7575
18

19      BY:  JESPER I. RASMUSSEN, ESQUIRE

20      FURTHER APPEARANCES ON NEXT PAGE

21      REPORTED BY:  KATHERINE WYATT, CSR, RPR, RMR
                       OFFICIAL REPORTER, USDC
22                     COMPUTERIZED TRANSCRIPTION BY ECLIPSE

23

24

25

        KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

02

1       FURTHER APPEARANCES:

2       FOR DEFENDANTS WREN, DAVIS AND NEWARK POLICE DEPARTMENT:

3       LAW OFFICES OF GARY M. LEPPER
        1600 S. MAIN STREET, SUITE 305
                       Page 1

                          transcrip july 9 08 distric court.txt
 4    WALNUT CREEK, CALIFORNIA 94596
      925-943-6190
 5    BY:  FURAH Z. FARUQUI, ATTORNEY AT LAW

 6    FOR DEFENDANTS USA CYCLING, INC. AND LINDA BUFFETTI:

 7    HINSHAW & CULTBERTSON LLP
      ONE CALIFORNIA STREET
 8    18TH FLOOR
      SAN FRANCISCO, CALIFORNIA 94111
 9    834-9070

10    BY:  DAVID IAN DALBY, ESQUIRE

11

12    FOR DEFENDANTS NOLAN, BIRCH, SAGE. BROCKIE, WILSON, O'HARA AND

13    FREMONT FREEWHEELERS:

14    MARK PHILIP MEUSER, ESQUIRE
      PO BOX 5412
15    WALNUT CREEK, CALIFORNIA 94596

16    925-262-2318

17

18

19

20

21

22

23

24

25

             KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

□3

 1    JULY 9, 2008                          9:00 O'CLOCK A.M.

 2

 3                       P R O C E E D I N G S

 4              THE CLERK:  CALLING CIVIL CASE C07-6213, CORNELIUS

 5    LOPES VERSUS FREMONT FREEWHEELERS, ET AL.

 6              PARTIES, PLEASE STEP FORWARD.

 7              PLEASE STATE YOUR APPEARANCES.

 8              MR. MEUSER:  MARK MEUSER FOR LARRY NOLAN, GARY BIRCH,
                                     Page 2

transcrip july 9 08 distric court.txt

9      JASON SAGE, TIM O'HARA, SALLY WILSON, RICHARD BROCKIE AND
10     FREMONT FREEWHEELERS.
11               THE PLAINTIFF:  CORNELIUS LOPES, PLAINTIFF.
12               MS. FARUQUI:  GOOD MORNING, YOUR HONOR.  FURAH
13     FARUQUI FOR JIM DAVIS, NEWARK POLICE DEPARTMENT AND -- AND THE
14     CITY.
15               MR. DALBY:  GOOD MORNING, YOUR HONOR.  DAVID DALBY
16     FOR USA CYCLING AND LINDA BUFFETTI.
17               MR. RASMUSSEN:  GOOD MORNING, YOUR HONOR.  JESPER
18     RASMUSSEN APPEARING ON BEHALF OF DEPUTY ATTORNEYS MESIC,
19     PETAGREW AND FARIA.
20               THE COURT:  OKAY. ALL RIGHT. WE HAVE SIX MOTIONS TO
21     DISMISS FILED BY THE DEFENDANTS WHO HAVE BEEN SERVED AND MADE
22     APPEARANCES IN THE CASE.
23               MR. -- IS IT LOPES OR --
24               MR. MEUSER:  YES, MA'AM.  YES, YOUR HONOR.
25               THE COURT:  I HAVE A CONSOLIDATED OPPOSITION FILED TO
         KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834
04

1      ALL SIX OF THE MOTIONS TO DISMISS.  AS I INDICATED PREVIOUSLY, I
2      HAVE A LIMITED TIME THIS MORNING.
3               THERE ARE ESSENTIALLY THREE PROBLEMS FOR YOU, MR.
4      LOPES.
5               THE PLAINTIFF:  THANK YOU.
6               THE COURT:  GIVEN THAT THERE WAS A PRIOR LAWSUIT IN
7      THIS COURT INVOLVING SOME OF THE SAME DEFENDANTS, GIVEN THAT
8      THERE WAS A PRIOR LAWSUIT IN THE ALAMEDA COUNTY SUPERIOR COURT
9      INVOLVING SOME OF THE SAME DEFENDANTS.
10               THE PROBLEMS THAT YOU HAVE TO OVERCOME, MR. LOPES,
11     ARE AT LEAST WITH RESPECT TO SOME OF THE DEFENDANTS.  THERE'S A
12     PRINCIPLE CALLED "RES JUDICATA" WHICH BARS GROUNDS FOR RECOVERY

Page 3

transcrip july 9 08 distric court.txt
13    IN THIS ACTION THAT COULD HAVE BEEN ASSERTED, WHETHER OR NOT

14    THEY WERE ASSERTED, IN A PRIOR LAWSUIT BETWEEN THE SAME PARTIES.

15            SO SOME OF YOUR CLAIMS ARE UNDOUBTEDLY BARRED FROM

16    BEING ASSERTED A SECOND TIME AROUND. YOU DON'T GET TWO BITES AT

17    THE SAME APPLE.

18            YOUR ONLY AVENUE, OBVIOUSLY, IS AN APPEAL TO A HIGHER

19    COURT, BUT YOU CAN'T GO TO ANOTHER TRIAL COURT AND ASSERT THE

20    SAME CLAIMS AGAINST THE SAME DEFENDANTS.

21            THAT'S ONE PROBLEM.

22            THE PLAINTIFF:  YES.

23            THE COURT:  THE OTHER PROBLEM WHICH EVERY DEFENDANT

24    WHO HAS BEEN SERVED -- AND NOT ALL OF THEM HAVE BEEN -- THAT'S A

25    SEPARATE PROBLEM.  BUT EVERY DEFENDANT THAT HAS BEEN SERVED AND

        KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

□5

1    HAS APPEARED IN THE CASE AND HAS FILED OR JOINED IN ON THE

2    MOTIONS TO DISMISS HAS ASSERTED A STATUTE OF LIMITATIONS

3    PROBLEM.

4            THE PLAINTIFF:  YES.

5            THE COURT:  THAT'S A REAL PROBLEM, AS WELL. THIS

6    INCIDENT OCCURRED IN JUNE OF 2004.

7            CHARGES AGAINST YOU WERE DISMISSED. YOUR OTHER

8    LAWSUIT ENDED.  ALL OF THESE THINGS OCCURRED IN LIKE -- I CAN'T

9    REMEMBER EXACTLY THE TIME FRAME.  I THINK OCTOBER 12TH OF 2000

10   AND?

11            MR. MEUSER:  FIVE.

12            THE COURT:  FIVE, WAS THE LAST EVENT THAT OCCURRED IN

13   THIS CASE. YOUR LAWSUIT WAS FILED MORE THAN TWO YEARS AFTER

14   THAT.

15            THERE'S A TWO-YEAR STATUTE OF LIMITATIONS ON ALL OF

16   YOUR CLAIMS WITH THE EXCEPTION OF THE RICO CLAIM, I BELIEVE. AND

17   THE STATUTE OF LIMITATIONS SIMPLY DOESN'T PERMIT SOMEONE TO FILE
                            Page 4

transcrip july 9 08 distric court.txt

18   A LAWSUIT AFTER THE EXPIRATION OF THAT LIMITATIONS PERIOD.

19          SO YOU'VE GOT TWO PROBLEMS, AND THEY APPLY TO THE

20   VAST MAJORITY OF THE CLAIMS AND DEFENDANTS THAT HAVE BEEN

21   ASSERTED.

22          SO THAT'S A PROBLEM.

23          THE PLAINTIFF:  YES.

24          THE COURT:  YOU DIDN'T REALLY ADDRESS THE LEGAL

25   QUESTIONS IN YOUR OPPOSITION. YOU PRETTY MUCH ADDRESSED MOST OF

        KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

□6

1    THE FACTUAL ISSUES.

2           THE PLAINTIFF:  YES.

3           THE COURT:  THERE ARE ALSO SERVICE OF PROCESS ISSUES.

4    YOU SUED 30 PEOPLE.

5           THE PLAINTIFF:  YES.

6           THE COURT:  A LOT OF THEM HAVEN'T EVEN -- THERE'S NO

7    PROOF OF SERVICE ON FILE FOR A NUMBER OF THEM. A LOT OF THEM

8    HAVEN'T APPEARED IN THE CASE.

9           GRANTED, A GOOD NUMBER OF THEM HAVE APPEARED EVEN

10   THOUGH SOME OF THEM WEREN'T PROPERLY SERVED. AND THEY HAVE

11   RAISED ISSUES.

12          THAT'S ANOTHER PROBLEM.  I'M NOT AS CONCERNED ABOUT

13   THAT WITH RESPECT TO THOSE WHO HAVE APPEARED BECAUSE THAT IS

14   SOMETHING THAT COULD BE CORRECTED.

15          THE REAL PROBLEM FOR YOU IS THAT THE STATUTE OF

16   LIMITATIONS BAR WOULD MEAN THAT YOU COULD NOT STATE A CLAIM

17   AGAINST THEM IF I FIND THAT THEY ARE BARRED.

18          SO YOU WOULD NOT BE GIVEN LEAVE TO AMEND IN THAT

19   REGARD. SO WITH THAT SAID, I'M GOING TO HAVE TO LIMIT THE AMOUNT

20   OF TIME THAT YOU HAVE. I WOULD LIKE EACH DEFENDANT TO TAKE FIVE

21   MINUTES.

Page 5

transcrip july 9 08 distric court.txt
22    AND THEN, MR. LOPES, YOU CAN HAVE TEN MINUTES TO

23    RESPOND.

24         IT'S YOUR MOTION.  WHO WOULD LIKE TO GO FIRST?

25         MR. MEUSER:  MARK MEUSER.  I HAVE THREE OF THE

         KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

☐7

1    MOTIONS.  THE FIRST ONE IS LARRY NOLAN'S MOTION TO DISMISS.  THE

2    SECOND ONE WAS GARY BIRCH AND JASON SAGE'S MOTION TO DISMISS.

3    AND THE THIRD ONE WAS TIM O'HARA, SALLY WILSON, RICHARD BROCKIE,

4    FREMONT FREEWHEELERS.

5         YOUR HONOR, YOU HAVE SUMMARIZED ALL OF OUR ARGUMENTS

6    SO WELL, I DON'T THINK I NEED TO SAY ANYTHING ELSE UNLESS YOU

7    HAVE A QUESTION, AN ISSUE THAT YOU REALLY FELT I NEEDED TO

8    ADDRESS.

9         THE COURT:  NO.

10         THE PLAINTIFF:  OKAY.

11         THE COURT:  NEXT?

12         MR. RASMUSSEN:  GOOD MORNING, YOUR HONOR.  JESPER

13    RASMUSSEN APPEARING ON BEHALF OF THE DEPUTY DISTRICT ATTORNEYS.

14         I'M NOT GOING TO WASTE THE COURT'S TIME BY

15    REITERATING WHAT WE HAVE SET FORTH IN OUR PAPERS.  THE ONLY

16    THING I WOULD ADD THAT THE COURT DID NOT MENTION IS THAT IN

17    ADDITION TO THE DEFENSES ALREADY RAISED THAT YOU'VE ALREADY

18    DISCUSSED, WE HAVE RAISED THE ABSOLUTE IMMUNITY DEFENSES, AS

19    WELL.

20         THANK YOU.

21         THE COURT:  AS TO THE D.A.'S.

22         MR. RASMUSSEN:  CORRECT.

23         THE COURT:  OKAY.

24         MS. FARUQUI:  GOOD MORNING, YOUR HONOR.  FURAH

25    FARUQUI FOR JOSEPH DALE WREN, THE CITY, AS WELL AS NEWARK POLICE

         KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834
                              Page 6

□8

transcrip july 9 08 distric court.txt

1 DEPARTMENT AND JIM DAVIS.

2          AND I WOULD JUST LIKE TO ADD THAT THE DEFENDANTS THAT

3 I REPRESENT WERE IN JUDGE BREYER'S COURTROOM IN THIS CASE, AND

4 IT WAS ALREADY DISMISSED SUMMARILY.

5          AND WE HAVE NOTHING ELSE TO SAY.

6          THE COURT:  I THINK THERE'S ACTUALLY ONE DEFENDANT

7 THAT WAS ADDED?

8          MS. FARUQUI:  WELL, HE WAS IN THE COMPLAINT.  HE

9 WASN'T -- HE WAS CITED IN THE COMPLAINT, SEVERAL VERSIONS.

10          I THINK THERE WERE FOUR AMENDED COMPLAINTS.  AND

11 JUDGE BREYER DID ADDRESS HIM IN HIS ORDER, JIM DAVIS.

12          IN ANY EVENT, THERE WAS PRIVITY AS WELL AS THE SAME

13 ISSUES.

14          THE COURT:  OKAY.  ALL RIGHT. NEXT?

15          MR. DALBY:  GOOD MORNING, YOUR HONOR.  DAVID DALBY

16 FOR USA CYCLING AND LINDA BUFFETTI.  I REALLY DON'T HAVE

17 ANYTHING TO ADD TO THE PAPERS.

18          THE ACTION AGAINST USA CYCLING SHOULD BE DISMISSED.

19 THEY WEREN'T PROPERLY SERVED.  DOESN'T STATE A CAUSE OF ACTION.

20 IT'S BARRED BY THE STATUTE OF LIMITATIONS.

21          AS TO LINDA BUFFETTI, IT DOESN'T STATE A CAUSE OF

22 ACTION.  AND BOTH CAUSES OF ACTION ARE BARRED BY THE TWO-YEAR

23 STATUTE OF LIMITATIONS.

24          THE COURT:  ALL RIGHT.

25          MR. DALBY:  ONE OTHER ISSUE, YOUR HONOR, THAT I DID

          KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

□9

1 NOT RAISE AS TO USA CYCLING.  THEY WOULD ALSO HAVE A RES

2 JUDICATA DEFENSE SINCE THEY WERE A DEFENDANT IN THE ALAMEDA

3 COUNTY SUPERIOR COURT AND WERE DISMISSED IN THAT ACTION BASED

Page 7

transcrip july 9 08 distric court.txt
4    ON A NONSUIT.

5              THANK YOU, YOUR HONOR.

6              THE COURT:  ALL RIGHT.  MR. LOPES, RESPONSE TO THESE
7    FOUR?

8              THE PLAINTIFF:  YES.  THANK YOU.

9              MY CLAIMS ARE BASED ON THE ADMISSION BY OFFICER WREN
10   IN 2007 THAT HE DIDN'T MIRANDIZE ME NOR -- BUT HE ALSO GAVE -- I
11   BELIEVE HE ALSO ALLOWED THE FREMONT FREEWHEELERS AND CYCLISTS TO
12   PERFORM THEIR OWN INVESTIGATION ON HIS BEHALF.

13             AND THAT WAS THE CIVIL CASE IN WHICH I WON AGAINST
14   THE CYCLISTS.  NEVERTHELESS, HE ALSO INDICATED --

15             THE COURT:  AND THE INVESTIGATION WAS PERFORMED --

16             THE PLAINTIFF:   THE INVESTIGATION WAS PERFORMED --

17             THE COURT:  -- IN 2004, WASN'T IT?

18             THE PLAINTIFF:  IT WAS PERFORMED IN 2004, BUT IT
19   WASN'T BROUGHT TO ANYONE'S ATTENTION UNTIL 2007.  AND THAT'S
20   WHEN I BELIEVE THAT THE DEPRIVATION OCCURRED AT THAT TIME.

21             THE COURT:  WHEN YOU SAY THAT DO YOU MEAN THAT YOU
22   DIDN'T KNOW THAT THERE HAD BEEN AN INVESTIGATION IN 2004?
23   INDEED, YOU COMPLAIN ABOUT THE --

24             THE PLAINTIFF:  I DID.  I COMPLAINED ABOUT THE
25   OFFICER'S INVESTIGATION.  BECAUSE IN THE OFFICER'S POLICE REPORT

               KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

10

1    HE STATES HE PERFORMED THE INVESTIGATION.

2              HE ALSO STATES THE DISTRICT ATTORNEY -- AND I SHOULD
3    KNOW THIS -- BUT THE DISTRICT ATTORNEY IN JUNE -- JULY 7, 2004
4    DIRECTED HIM TO CONTACT A CYCLIST WHO WAS PUNCHED.

5              THE CYCLIST TESTIFIED AT THE 2007 TRIAL THAT HE NEVER
6    SPOKE TO OFFICER WREN THAT DAY.  THAT ALSO -- THAT DEPRIVATION
7    ALSO OCCURRED ON THAT -- AT THAT TIME, AS WELL.

8              SO WHEN THE OFFICER WROTE BACK TO THE DISTRICT
                              Page 8

transcrip july 9 08 distric court.txt

     9  ATTORNEY ON THE 8TH OF '04, JULY, STATING THAT HE CONTACTED THE
    10  CYCLIST. THE CYCLIST PUNCHED. I BELIEVE HE SAW LOPES RAISING
    11  HIS HAND, ET CETERA.

    12          BUT, NEVERTHELESS, WHEN THE OFFICER TOOK THE STAND
    13  AND STATED, ONE, HE DID NOT MIRANDIZE ME; TWO, THAT THE
    14  INVESTIGATION WAS CONDUCTED UNDER THE AUPICES OF THE CYCLIST AND
    15  NOT HIM, AND THEN THEY FIND OUT IN 2007 DURING THE SAME TRIAL
    16  THE ACCIDENT OCCURRED -- THAT IS THE CYCLIST RAN INTO ME -- ON A
    17  SATURDAY ON THE 12TH OF JUNE. OFFICER WREN WAS OFF THE 14TH
    18  THROUGH THE 17TH, COMING BACK ON THE 18TH.

    19          IT WAS THEN ON THE 18TH OFFICER WREN WROTE THE
    20  DISTRICT ATTORNEY, STATED HE CONDUCTED HIS INVESTIGATION.

    21          THEREFORE, CHARGED ME FOUGHT AGAINST THE PLAINTIFF.

    22          SO I DIDN'T FIND OUT ALL THIS UNTIL THE TRIAL AGAIN
    23  IN '07, AGAIN, WHEN DEPRIVATION OCCURRED.

    24          OFFICER WREN DIDN'T MIRANDIZE ME. OFFICER WREN --

    25          THE COURT:  THE ALAMEDA COUNTY TRIAL WAS IN 2007?

            KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

011

     1          THE PLAINTIFF: MY CIVIL CLAIM. MY CIVIL TRIAL. OH,
     2  SORRY, THE CYCLISTS PERIOD FOR THE STATE OR FOR THE --

     3          THE COURT:  THAT'S WHAT I MEAN. THE CIVIL TRIAL WAS
     4  IN 2007?

     5          THE PLAINTIFF:  2007, YES, LAST YEAR. THE CRIMINAL
     6  COMPLAINT WAS IN 2004. I WAS NOT ARRESTED, NOR WAS I MIRANDIZED,
     7  OR I FOUND OUT BY JUST CALLING THE POLICE DEPARTMENT GETTING A
     8  REPORT.

     9          BUT NEVERTHELESS I WASN'T TOLD UNTIL AUGUST 3RD THAT
    10  THERE WAS A WARRANT FOR MY ARREST. I THEN TURNED MYSELF IN.
    11  THERE WAS A CRIMINAL TRIAL IN SEPTEMBER '05.

    12          THIS IS ALL BASED ON THE COURT'S LIES, BUT

transcrip july 9 08 distric court.txt
13    NEVERTHELESS, THERE WAS A CRIMINAL TRIAL IN '05 THAT LASTED

14    SEVEN WEEKS IN THE FREMONT SUPERIOR COURT.

15          SO THERE WAS A JURY VERDICT OF SEVEN TO THREE. THEY

16    COULD NOT REACH A VERDICT. THE COURT THEN SENT THEM BACK TO

17    DELIBERATE AGAIN.

18          THEY CAME BACK, SAID THEY COULDN'T REACH A VERDICT.

19    AND THEN, THAT'S WHEN THE COURT DISMISSED.  BUT IT WAS THE

20    ENTIRE TIME THAT THE D.A., THIS GENTLEMAN'S CLIENTS, WAS

21    EMPHATIC THAT I STUCK MY ARM OUT, PUNCHED TWO CYCLISTS IN THE

22    CHEST WHILE JOGGING TWO-AND-A-HALF HOURS AROUND THE CITY.

23          THE CYCLISTS THEN IN 2007 AT THE CIVIL CASE GAVE OR

24    SHOWED A RELEASE FORM IN WHICH THEY SIGNED STATING THAT THEY HAD

25    TAKEN RESPONSIBILITY FOR THEIR ACTIONS FOR ANY EVENTS.

          KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

012

1           BUT YET, THEY GOT TOGETHER BECAUSE THEY DIDN'T WANT

2     TO FIND -- THE REFERENCE THAT THE COURT HAS -- THAT THEY DIDN'T

3     WANT TO BE FOUND LIABLE, THEREFORE THEY NAME THE JOGGER.

4           WHEN OFFICER WREN ALLOWED THE CYCLISTS FROM HIS TIME

5     OFF FROM THE 14TH TO THE 17TH TO CONDUCT THEIR INVESTIGATION.

6     ON THE 18TH, JASON SAGE -- THAT WOULD BE HIS CLIENTS -- JASON

7     SAGE, THE PROMOTER, CONTACTED OFFICER WREN ON THE 18TH WHEN HE

8     CAME BACK FROM HIS FOUR DAYS OFF WITH A BINDER OF HIS

9     INVESTIGATION.

10          THAT BINDER WAS USED, WAS THEN GIVEN TO THE D.A.

11    SAYING -- THIS IS OFFICER WREN SPEAKING -- "THIS IS MY

12    INVESTIGATION."

13          SO WITH ALL RESPECT TO THE COURT DEPRAVATION BEGAN ON

14    NOVEMBER, I THINK, OR OCTOBER. I DON'T REMEMBER WHEN THE CIVIL

15    TRIAL WAS.  OCTOBER OR NOVEMBER '07 WHEN I FOUND OUT THIS

16    INFORMATION.

17          ONE:  THE OFFICER WAS OFF WORK FOR FOUR DAYS; CAME
                        Page 10

transcrip july 9 08 distric court.txt

18   BACK ON THE 18TH. THAT'S WHEN HE BELIEVED THROUGH HIS

19   INVESTIGATION I SHOULD BE CHARGED WITH A CRIME.

20          AGAIN, CYCLISTS CONDUCTED THEIR INVESTIGATION --

21   SORRY -- CONDUCTED THEIR INVESTIGATION FOR THE NEWARK POLICE

22   DEPARTMENT. AND THE DISTRICT ATTORNEY USED THAT TO TRY A

23   PEDESTRIAN FOR TWO COUNTS OF BATTERY. AND ON TOP OF THAT A HATE

24   CRIME.

25          A HATE CRIME WAS NEVER INTRODUCED IN THE CRIMINAL

013          KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

1    TRIAL. BUT, YOUR HONOR, YOU TRY TO FIND AN ATTORNEY FOR BATTERY

2    OF SOMEBODY WHEN YOU GOT A HATE CRIME CHECKED OFF ON A POLICE

3    REPORT. IT JUST DIDN'T HAPPEN.

4          I SPENT $72,000 ON A CRIMINAL ATTORNEY, GLADLY. AND

5    I'LL PAY IT AGAIN BECAUSE I'M GLAD I PAID IT -- EXCUSE ME --

6    BECAUSE OF THE FACT I WON. BUT THE POINT IS DEPRIVATION BEGAN

7    IN '07.

8          THE COURT: OKAY. ALL RIGHT.

9          THE PLAINTIFF: THANK YOU.

10          THE COURT: ANYTHING ELSE?

11          THE PLAINTIFF: NO.

12          THE COURT: ALL RIGHT. ANYTHING ELSE FROM ANYONE?

13   NO?

14          MR. DALBY: YOUR HONOR, THERE SEEMS TO BE A LITTLE

15   BIT OF CONFUSION AS TO THE EXACT TIME OF EVENTS. THE CRIMINAL

16   PROSECUTION AGAINST MR. LOPES TERMINATED IN OCTOBER OF 2005.

17   AFTER THAT TERMINATION OF THE CRIMINAL PROSECUTION IN

18   OCTOBER 2005 MR. LOPES INSTITUTED CIVIL PROCEEDINGS IN THE

19   ALAMEDA SUPERIOR COURT IN 2006 AND IN THIS COURT AGAINST THE

20   OFFICERS AND THE DISTRICT ATTORNEY'S OFFICE.

21          AS YOU KNOW, LAST YEAR THIS COURT DISMISSED THE

Page 11

transcrip july 9 08 distric court.txt
22   ACTION THAT WAS IN THIS COURT WHICH WAS THE CIVIL RIGHTS ACTION

23   AGAINST THE OFFICERS AND THE POLICE DEPARTMENT AND THE D.A..

24   THERE WAS A TRIAL IN THE CIVIL ACTION IN THE ALAMEDA SUPERIOR

25   COURT LAST YEAR AT WHICH USA CYCLING AND A NUMBER OF THE RIDERS

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

☐14

1    WERE DEFENDANTS.

2            THAT CASE WAS TRIED. AT THAT CASE, MR. LOPES

3    ATTEMPTED TO RAISE THIS ISSUE.

4            THE COURT:  THERE WERE ACTUALLY THREE OTHER

5    PROCEEDINGS.

6            MR. DALBY:  YES.

7            THE COURT:  THE CRIMINAL PROCEEDING, THE SUPERIOR

8    COURT TRIAL AND THE 1983 ACTION IN THIS COURT THAT WAS -- FOR

9    WHICH SUMMARY JUDGMENT WAS GRANTED.

10           MR. DALBY:  CORRECT, YOUR HONOR.

11           THE COURT:  OKAY.

12           MR. DALBY:  AT THE TRIAL LAST YEAR IN THE CIVIL

13   PROCEEDING AGAINST USA CYCLING AND A NUMBER OF THE BICYCLISTS,

14   MR. LOPES AT THAT TIME ATTEMPTED TO RAISE ON A MOTION AT TRIAL

15   THIS CIVIL CONSPIRACY ARGUMENT. AND AT THAT TRIAL WE OPPOSED

16   THAT.

17           SO GETTING, ONCE AGAIN, TO THE ISSUE OF RES JUDICATA

18   HE HAD AN OPPORTUNITY TO RAISE THE ISSUE OF A CIVIL CONSPIRACY

19   THAT THE BICYCLISTS AND USA CYCLING PARTICIPATED IN A CONSPIRACY

20   TO BRING CRIMINAL CHARGES AGAINST HIM.

21           THE JUDGE REEJECTED THAT AND, IN FACT, INSTRUCTED AND

22   RULED THAT CITIZENS SHOULD BE ENCOURAGED TO COOPERATE WITH

23   AUTHORITIES IN INVESTIGATING ACTIONS SUCH AS THIS.

24           SO IN TERMS OF THE RES JUDICATA DEFENSE IT APPLIES TO

25   THIS ARGUMENT, ONCE AGAIN.

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

transcrip july 9 08 distric court.txt

□15

1          THE PLAINTIFF:   THANK YOU, YOUR HONOR. IF I MAY.

2          HE'S ACTUALLY INCORRECT.   IT WAS NEVER RAISED BEFORE

3     THE COURT.  BUT, MOREOVER, IF IT WAS RAISED BY THE ATTORNEY AT

4     THE TIME, THE INFORMATION WHEN OFFICER WREN TOOK THE STAND AND

5     STATED THE VERY STATEMENTS THAT I MADE TO THE COURT, THAT'S

6     AGAIN WHEN DEPRIVATION OCCURRED BECAUSE IT WAS NEVER -- NO CIVIL

7     RIGHTS VIOLATION WAS RAISED IN THE STATE COURT IS WHAT I'M

8     TRYING TO SAY.

9          IT WAS ON THE ACTS OF ME BEING -- MY FACE BEING

10    MANGLED, MEDICAL DAMAGES.  AND THAT'S WHAT THE ENTIRE CLAIM

11    ENTAILED.  AND CLEARLY, ONCE AGAIN, FOR THE RECORD I WON.

12          BUT I DID NOT, NOR DID THE ATTORNEYS RAISE ANY

13    CONSTITUTIONAL VIOLATIONS IN THE STATE COURT, YOUR HONOR.

14          AND, AGAIN, WHEN THE OFFICER TOOK THE STAND THAT'S

15    WHEN I FOUND OUT.  AND WHEN EVIDENCE WAS PRESENTED AT CIVIL

16    TRIAL IS WHEN I FOUND OUT THAT EVERYTHING TRANSPIRED INCORRECTLY

17    AS TO THE WAY THE POLICE REPORT WAS WRITTEN.

18          THE COURT:   OKAY.

19          MS. BROOKS:   THANK YOU, YOUR HONOR.

20          THE COURT:   ALL RIGHT.  ANYTHING ELSE?

21          MR. RASMUSSEN:  YES.

22          THE COURT:   ALL RIGHT.

23          MR. RASMUSSEN:   JUST TO THROW A LITTLE MEAT ON THE

24    BONES, YOUR HONOR, JUST SO THE TIME FRAME IS A LITTLE CLEARER,

25    THE CRIMINAL CASE FILED BY THE DEPUTY DISTRICT ATTORNEYS WAS

          KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

□16

1     DISMISSED OCTOBER 12TH, 2005.

2          WHAT I'M HEARING MR. LOPES NOW SAYING IS THAT

3     APPARENTLY SOMETIME IN ANOTHER TRIAL IN WHICH THE DEPUTY D.A.'S

Page 13

transcrip july 9 08 distric court.txt
4     HAD BEEN DISMISSED HE DISCOVERED SOMETHING THAT FOR SOME REASON

5     HE FAILED TO EXPLAIN HE DIDN'T DISCOVER EARLIER.

6              SO I SUPPOSE THAT'S TRYING TO -- AN ARGUMENT TO GET

7     AROUND THE STATUTE OF LIMITATIONS DEFENSE.

8              THE FACT OF THE MATTER IS HE FILED HIS FIRST LAWSUIT

9     WHICH DID INCLUDE THE DEPUTY D.A.'S ON MARCH 16, 2006.  HE WAS

10    GIVEN FOUR TIMES TO AMEND THAT.  HE FILED HIS FOURTH AMENDED

11    COMPLAINT ON NOVEMBER 12TH, 2006.

12             AND JUDGE BREYER DISMISSED THAT COMPLAINT AGAINST TWO

13    OF THE DEPUTY D.A.'S ON DECEMBER 14TH, 2006.  AND A YEAR LATER

14    HE FILED THIS LAWSUIT HERE.

15             SO REGARDLESS OF WHETHER OR NOT HIS CLAIM THAT HE WAS

16    IGNORANT OF ANY CLAIMS HE COULD HAVE BROUGHT AGAINST THE DEPUTY

17    D.A.'S EARLIER, AND THAT MAY HAVE TOLLED THE STATUTE, RES

18    JUDICATA STILL APPLIES AS TO THE TWO DEPUTY D.A.'S THAT WERE

19    SERVED IN THE FIRST LAWSUIT, AND ACTUAL IMMUNITY APPLIES AS

20    WELL, TOO.

21             SO WE THINK OUR MOTIONS SHOULD BE GRANTED.

22             THANK YOU.

23             THE COURT:  ALL RIGHT.  WELL, IT'S GOING TO TAKE THE

24    COURT SOME EFFORT AND TIME TO UNRAVEL ALL OF THIS. THERE ARE 30

25    DEFENDANTS AND DOZENS OF CLAIMS.

        KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

☐17

1              I'LL ISSUE A WRITTEN ORDER AFTER I'VE MADE MY WAY

2     THROUGH ALL OF THE VARIOUS DIFFERENT MOTIONS.

3              THE PLAINTIFF:  ONE THING.  COULD I COMMENT ON THE

4     GENTLEMAN'S STATEMENT AT ALL?

5              THE COURT:  THEY GET THE LAST WORD.  IT'S THEIR

6     MOTION.

7              THE PLAINTIFF:  I'M SORRY.

8              THE COURT:  OKAY.  I'VE HEARD ENOUGH.
                         Page 14

transcrip july 9 08 distric court.txt

9          MR. MEUSER:  YOUR HONOR?

10         THE COURT:  YES?

11         MR. MEUSER:  THE PEOPLE WHO HAVE NOT BEEN PROPERLY

12    SERVED, ARE YOU GOING TO BE TAKING CARE OF THEM WITH THIS

13    MOTION?

14              THE COURT:  I AM.

15              MR. MEUSER:  OKAY. THANK YOU.

16              (THEREUPON, THIS HEARING WAS CONCLUDED.)

17

18

19

20

21

22

23

24

25

KATHERINE WYATT, OFFICIAL REPORTER, CSR, RMR (415) 487-9834

☐18

1                    CERTIFICATE OF REPORTER

2         I, KATHERINE WYATT, THE UNDERSIGNED, HEREBY CERTIFY

3    THAT THE FOREGOING PROCEEDINGS WERE REPORTED BY ME, A CERTIFIED

4    SHORTHAND REPORTER, AND WERE THEREAFTER TRANSCRIBED BY ME INTO

5    TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE

6    RECORD OF SAID PROCEEDINGS.

7         I FURTHER CERTIFY THAT I AM NOT OF COUNSEL OR

8    ATTORNEY FOR EITHER OR ANY OF THE PARTIES IN THE FOREGOING

9    PROCEEDINGS AND CAPTION NAMED, OR IN ANY WAY INTERESTED IN THE

10   OUTCOME OF THE CAUSE NAMED IN SAID CAPTION.

11         THE FEE CHARGED AND THE PAGE FORMAT FOR THE

12   TRANSCRIPT CONFORM TO THE REGULATIONS OF THE JUDICIAL

Page 15



May 19, 2006

Patricia Turnage, Esq
1260 B St.
Hayward, CA. 94541

RE: Civil Discovery Neal Lopes

Dear Mrs. Turnage:

Pursuant to our phone conversation of last week, I have spoken with my superior about discovery of contents of the District Attorney's Office closed file in the matter of People of the State of California v. Leal Lopes. As I told you, the file in this case has been stripped since the case was dismissed by my office after a jury trial resulted in a mistrial because the jury could not reach a verdict. The only remaining part of the file still in existence is the activity sheet. This document is compiled by the lawyers in my office in preparation for litigation of a criminal case. The majority if not the entire contents of the activity sheet is work product. In order to obtain access to this document, you will need to serve a subpoena on the District Attorney's Office. In all likelihood, the District Attorney's Office or counsel for the District Attorney's Office will seek to have the subpoena quashed. I hope this information answers your question.

Very truly yours,

THOMAS J. ORLOFF
DISTRICT ATTORNEY
COUNTY OF ALAMEDA

BY:

LISA M. FARIA
DEPUTY DISTRICT ATTORNEY

cc: Thomas J. Orloff
    Richard Klemmer
    Colton Carmine

Yahoo!  My Yahoo!  Mail   Make Y! your home page                                    Search
                                                                    the Web  [            ]  [ Search ]

**YAHOO!** MAIL   Welcome, **neallopes**           Mail Home – Mail Tutorials – Help
                            [Sign Out, My Account]

ALL-NEW 2006
**GRAND VITARA**
                                **Test Drive the 2006 Grand Vitara
                                and Get a Free $25 Gift Card**     CLICK HERE
                    PREMIUM SHOWN $26,099 MSRP                     LIMITED TIME OFFER

| **Mail** ˅ | **Addresses** ▼ | **Calendar** ▼ | **Notepad** ▼ |  **What's New - Mail For Mobile - Upgrades - Options** |

[ **Check Mail** ]  [ **Compose** ]   [                    ]  [ **Search Mail** ▼ ]  [ **Search the Web** ]

Watch Videos
On Yahoo! Music

**Folders**       [Add – Edit]

**Inbox (4)**
Draft
Sent
**Bulk (4)**      [Empty]
Trash           [Empty]

See your
credit score: $0

AT&T Yahoo! High
Speed: $12.99/mo

Bad Credit
Refinance Rates

Earn a degree
in 1 yr.

Previous | Next | Back to Messages

[ **Delete** ]  [ **Reply** ▼ ]  [ **Forward** ▼ ]  [ **Spam** ]  [ **Move...** ▼ ]

This message is not flagged. [ Flag Message - Mark as Unread ]     Printable View

**Date:**    Tue, 25 Jul 2006 13:09:50 -0700 (PDT)

**From:**    "pturnage@sbcglobal.net" <pturnage@sbcglobal.net>  📇 Add to Address
            Book   📱 Add Mobile Alert
            Yahoo! DomainKeys has confirmed that this message was sent by
            sbcglobal.net. Learn more

**Subject:** defamation cause of action

**To:**      "Neal Lopes" <neallopes@yahoo.com>

Neal, as we have discussed numerous times, at this time it is not clear if the
defamation cause of action has merit.  As we discussed, I did not want to
include a cause of action for defamation in the original complaint—I did not
think it was meritorious because after speaking with the D.A. she cannot testify
that she relied solely on the statements of the witnessses in the police report in
determining whether to charge you with a crime.  The best she can say is 90%
of all cases she charges do not require further investigation and she charges
on the information in the police report.  She could not remember if a separate
investigation was ordered and her file has been purged.  In order to win, you
must prove that the statements were made were statements of material fact,
not opinion, and that the statements were used by the D.A. to charge you which
then caused you the damage you suffered.

If we were to sue for defamation, it would be subject to an ant-slapp suit.  This
suit is based upon an individual's right to state his opinion and its purpose is to
punish those who bring such suits as it is looked upon as an attempt to
interfere with free speech.  If such a motion was brought and you lost, you and I
both would be subject to sanctions in the form of attorney's fees.  At this
juncture, I am not willing to subject you or me to this risk.

I hope putting this in writing explains bettter what I have discussed with you
before.

PAT

[ **Delete** ]  [ **Reply** ▼ ]  [ **Forward** ▼ ]  [ **Spam** ]  [ **Move...** ▼ ]



1          MS. MESIC:  Thank you, your Honor.

2          People call Officer Joe Wren to the stand.

3                    JOSEPH DALE WREN,

4          called as a witness by the People, having

5          been first duly sworn, testified as follows:

6          THE CLERK:  Thank you.  Have a seat, please.

7          Officer, could you please state your full name for

8   the Court and spell it, please?

9          THE WITNESS:  Yes.  It's Joseph Dale Wren, W-r-e-n.

10         THE CLERK:  Thank you.

11         THE COURT:  Good afternoon, Officer Wren.

12         You may proceed, Miss Mesic.

13                   DIRECT EXAMINATION

14  BY MS. MESIC:  Q.   Good afternoon, sir.

15         What do you do for a living?

16  A.   I'm a training officer for the city of Merced Police

17  Department.

18  Q.   What's a training officer?

19  A.   I'm tasked with training newly hired police officers.

20  Q.   And you said you work in the Merced Police Department.

21  And were you with any other police department prior to

22  Merced?

23  A.   Yes, I was with the city of Newark.

24  Q.   How long were you with the city of Newark?

25  A.   Just about eight months.

26  Q.   How long have you been with Merced?

27  A.   I was a Merced County Sheriff's Deputy for eight years

28  prior to working for Newark, so I've been doing this for

1    MS. MESIC:  Thank you.

2    THE COURT:  Mr. Cahners?

3                    CROSS-EXAMINATION

4    BY MR. CAHNERS:  Q.  Officer, when you went out to the scene

5    it was your job to act as an investigator, correct?

6    A.    As a first responder, yes, sir.

7    Q.    And one of the things you wanted to do, to do your job,

8    was to try to determine as best you could what had really

9    occurred out there at the collision time, correct?

10    A.    That was one of my functions, yes.

11    Q.    And that's one of the reasons you talked to the

12    individuals that you saw out there, correct?

13    A.    Yes.

14    Q.    You were looking for possible witnesses, weren't you?

15    A.    Yes.

16    Q.    And when you found somebody you thought might be a good

17    witness or an appropriate witness, you did your best to

18    interview him, correct?

19    A.    Yes.

20    Q.    And then I would assume you did your best to take down

21    the statements that they gave you in an accurate fashion; is

22    that correct?

23    A.    Yes.

24    Q.    It did appear to you, didn't it, when you were out

25    there that there was an issue as to how this collision

26    occurred, correct?

27    A.    I'm -- I'm not understanding your question.

28    Q.    In other words, the reason you were out there talking to

Exhibit G

## NEWARK POLICE DEPARTMENT
PROPERTY/DRUG REPORT/NARRATIVE

| CASE NO. | DATE | OFFICER | NO. | | |
|----------|------|---------|-----|--|--|
| 04-3845 | 7/7/2004 | J. Wren | 66 | Page 1 of 1 Page | |

### PROPERTY MODULE

| VIC STATUS UCR ARTICLE NAME | MODEL/MAKE | SERIAL NO. | DESCRIPTION | QTY | VALUE |
|---|---|---|---|---|---|
| NO | | | | | |

### SUPPLEMENTAL INVESTIGATION:

On 07/06/2004 I received a request for follow up from the district attorney's office. The request was asking if the bicyclist that was punched was located.

The victim, Bob Parker, was competing in a bicycle rode race when he was struck by the suspect, Neal Lopes. Parker did not see Lopes because of the racers that were in front of him. Witnesses described Lopes' actions prior to the assault. Lopes was seen holding out his right arm, striking Parker in the chest. This caused Parker to wreck on his bicycle and subsequently cause a chain reaction crash involving other bicyclists.

JUL 0 7 2004

OFCR J. WREN #66
Newark Police Department